UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JCM, JR. (XXX-XX-9076)               CIVIL ACTION NO. 09-cv-0943

VERSUS                               JUDGE STAGG

U.S. COMMISSIONER SOCIAL             MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

**Introduction**

JCM, JR. ("Plaintiff") was born in 1963 and has a long work history in physically demanding jobs, with his last job at a battery manufacturing facility where he worked for about 20 years. Plaintiff began experiencing hip pain and, despite treatment, eventually lost his job. His treating physician and a consultative examiner found some signs of arthritis in the hip but not to the extent to support the level of pain claimed by Plaintiff. An ALJ, based on the physicians' reports, discounted Plaintiff's complaints and found that he was not disabled because he was capable of performing his past relevant work as a machine operator.

The Appeals Council denied a request for review. Plaintiff, who is self-represented, filed this civil action seeking judicial review. He pointed to medical evidence obtained a few months after the Appeals Council's denial. That evidence included a diagnosis, apparently for the first time, of a spinal problem that could have caused the pain about which Plaintiff

complained.  This court remanded the case to the Commissioner for consideration of the new evidence and further development of the record regarding the source of the pain.

On remand, ALJ Mary Elizabeth Johnson conducted a hearing and reviewed the additional evidence, as well as a report from a consultative examination.  She found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, and a vocational expert ("VE") identified sedentary jobs such as document preparer, addresser, and election clerk that Plaintiff could perform.  The ALJ, accordingly, found that Plaintiff was not disabled.  Tr. 148-55.  The Appeals Council issued a reasoned decision that, with one administrative exception, adopted the findings of the ALJ.  Tr. 142-43.

The Commissioner filed with the court the additional administrative record as required by sentence six of 42 U.S.C. § 405(g).  Plaintiff filed a brief in which he challenges the ALJ's assessment of his RFC, assessment of his credibility, and ability to perform the demands of the identified jobs.  Plaintiff also seeks a second remand on the grounds that recent medical records suggest his pain may be caused by piriformis syndrome.  For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.


**Five Step Review Process**

A disability claim is analyzed under a five-step sequential analysis established in the regulations. It requires the ALJ to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the regulations; (4) the impairment prevents the claimant from doing

past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity.  The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is determined to be disabled or not disabled, the inquiry ends. See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Relevant Facts**

In March 2004, while Plaintiff was still working as a machine operator, he complained to Dr. Ricky Davidson of moderate right hip pain.  Dr. Davidson prescribed non-narcotic anti-inflammatory medications.  Plaintiff returned in April 2005 and again complained of

right hip pain, and similar medication was prescribed.  Dr. Davidson diagnosed, at a later visit, degenerative joint disease of the right hip.  Tr. 103-14.

Dr. Davidson referred Plaintiff to Dr. A. E. Dean, an orthopedic physician.  Plaintiff told Dr. Dean that he had experienced pain in his right hip for the past two and a half years that made it hurt to sit, drive, get up and down, stand, and make certain motions with his hip. Plaintiff reported he had been taking Celebrex, which helped "some" but caused rapid heartbeat.  The hip pain was getting increasingly worse.  Dr. Dean reviewed an X-ray of the right hip that had been taken by Dr. Davidson and found that it showed "only minimal arthritic changes, very minimal."  He diagnosed early arthritic changes to the right hip, and he recommended an MRI to rule out a vascular necrosis.  He also advised Plaintiff to stop taking Celebrex and return to Ibuprofen as needed.  Tr. 121-22.

In May 2005, Plaintiff underwent an MRI "of the pelvis" that identified no significant abnormality.  Tr. 120.  The Agency referred Plaintiff to Dr. Clinton McAlister for a consultative examination that was performed in January 2008.  Dr. McAlister reviewed the medical records, including the X-ray and MRI, interviewed Plaintiff, and examined him. Plaintiff described right hip pain, on a 10 scale, as a constant 8 with increases to 10 with activities.  He said he sometimes had sharp pains that would shoot down his leg.  Plaintiff reported problems walking, standing, and sitting.  He could not tie his own shoes and had difficulty getting on and off a commode, but he could shower and eat on his own.  Plaintiff told the physician that he lived with his mother, who did all of the household chores, and he

spent most of his day on the couch or in bed.  Tr. 128-29.  Plaintiff's testimony at the hearing was similar with regard to his daily activities.  Tr. 17-32.

Dr. McAlister noted that the hip X-ray showed no boney or soft tissue abnormalities. It was his impression that Plaintiff's "symptomatic complaints are not verified by any objective findings."  There was little restriction of motion on either side, and a previous MRI had been unremarkable.  The absence of objective data to substantiate the complaints of severe pain caused Dr. McAlister to conclude that Plaintiff could perform at a medium activity level.  Tr. 132.

The original ALJ reviewed this evidence and concluded, quite reasonably, that Plaintiff had the RFC to perform the full range of light work activity.  He concluded that Plaintiff was not disabled because that RFC allowed Plaintiff to perform his past relevant work as a machine operator.  The ALJ agreed with Dr. McAlister that Plaintiff's alleged level of pain was far beyond what could be supported by the objective evidence.  Tr. 10-15.

The Appeals Council denied Plaintiff's request for review in February 2009.  Soon afterwards, in May 2009, Plaintiff reported to the emergency room at the LSU Health Sciences Center with a complaint of hip pain.  Plaintiff reported that the pain had been present since 2002 despite no history of trauma.  Plaintiff told the LSU physicians that he had been evaluated by three other doctors who told him that he possibly had arthritis.  He described the pain as continuous, burning, radiating from his hip down his right leg to the big toe.  The medical report states that the pain described by Plaintiff was "radicular pain" more than arthritis, and Plaintiff was discharged with instructions for addressing lumbosacral

neuritis, an inflammation of one of the nerves that originate from the spinal cord.  Plaintiff was told to limit his activity, including avoiding lifting anything over 10 pounds.  Plaintiff was prescribed Prednisone and Ibuprofen.  Doc. 11, pp. 12-14.

Plaintiff wrote in his original appeal brief that his LSU physician, Dr. Trisler, immediately told him that his pain sounded more like a neurological condition than arthritis. When Dr. Trisler ordered the MRI, Plaintiff noted he had undergone a prior MRI, but Dr. Trisler said this MRI would be of a different kind that would check for neurological problems.  Plaintiff returned to LSU for an MRI of the lumbar spine (not the hip/pelvis as in the prior MRI) in July 2009.  The report states that there was "disc dessication, especially at L4-L5 level."  There was also "broad based bulging of the L4-L5 disc posteriorly into the spinal canal, possibly narrowing of the bilateral neural foramina at this level."  The report continued, "left renal hyperintense lesion on axial T2 images may represent a simple cyst." Plaintiff reported that physicians told him the nerve problem is the cause of pain that runs from his hips and down his legs.

The LSU evidence was new and the first record evidence of a spine/nerve problem that could be causing the pain the other physicians attributed to mild arthritis. There was a reasonable probability that the new evidence, fully explored, could change the outcome of the Commissioner's decision if it suggested Dr. Dean and Dr. Davidson overlooked objective physical problems that could give rise to the level of pain that Plaintiff claims.  A remand was ordered to allow the Agency to gather the new LSU records, obtain any additional

records regarding treatment and diagnosis of the spine problem, and perhaps refer Plaintiff for a consultative evaluation or testing regarding the spine issue.

The LSU records gathered on remand show that Plaintiff was treated for hip pain, disc herniation, arthritis, sciatica, and radiculopathy.  He was prescribed medications such as Prednisone, Flexeril, and Neuronton. Tr. 152. Plaintiff was also seen at the VA Medical Center for hip and back pain from November 2010 through May 2011.  X-rays of the pelvis and lumbar spine showed degenerative changes at the sacroiliac joints, with spondylosis in the spine.  Tr. 322.  One visit noted a negative straight-leg raise test and good lower strength. Tr. 335.  The VA physicians prescribed a number of medications as well as injections to treat the pain.  Tr. 337, 340-41.

The Agency sent Plaintiff to Dr. Mary McWilliams, a board certified neurologist, for a consultative examination.  Plaintiff described pain radiating down the side of his leg that made it difficult for him to drive or even sleep.  Dr. McWilliams put Plaintiff through a number of walking, bending, and marching exercises.  She concluded that Plaintiff had signs of sacroiliac joint fusion, with decreased balance as a result.  His complaints of pain radiating down his leg from his spine did not appear physiologic.  He did have a slow gait and poor dexterity, but no stigmata of arthritis in the small joints.  "His reported pain levels appear excessive based on observation of his movements, but he does have signs of moderate pain impairing movement."  She recommended medical management to control the moderate pain. Tr. 372-76.  Plaintiff later received lumbar epidural injections.  Tr. 404-17.

Dr. McWilliams completed a functional capacity assessment form on which she indicated findings that Plaintiff could sit for eight hours in a workday, stand a total of four hours, and walk a total of two hours. She found that he could perform the lifting demands of sedentary work but must limit pushing/pulling to no more than frequently (from one-third to two-thirds of the time) and can never operate foot controls because of his sacroiliac pain. She also found modest postural limitations. Tr. 377-82.

Plaintiff testified at a new hearing on remand. He said that he was fired from his job in July 2005 because of absences. He was able to obtain unemployment compensation that lasted through June 2006, which he asserts is the onset date of disability. He said his problems began, however, as far back as 1999 and became progressively worse. Plaintiff testified that the injections relieved his pain for only four or five days, and he claimed none of his medication was helping. He said he had to sit to one side or would not be able to feel his legs. He also said he could not stand very long or his legs would go to sleep. The longest distance he walks is about 40 yards to the mailbox. Tr. 167-73.

The VE asked Plaintiff if he had any problems with his arms. Plaintiff said that he recently started having spasms in them when, for example, he took out the trash. He also claimed that his whole body would spasm if he put his head back to gargle. Tr. 174. (There are no medical reports that support such symptoms.) Plaintiff testified that he could shower and tend to personal needs with some difficulty, and he could wash dishes, vacuum a little, and sweep. He estimated that he could lift about 15 pounds. Three of his sons had graduated

since the last hearing, but Plaintiff said he did not attend the ceremonies because of his limitations.  Tr. 175-79.

The ALJ found that Plaintiff had the RFC to lift or carry up to 20 pounds occasionally and 10 pounds frequently, stand up to four hours in a workday, walk for up to two hours in a workday, and sit for up to eight hours in a workday.  She also found that Plaintiff could occasionally bend, stoop, and crouch, but he cannot kneel, squat, or climb.  He cannot operate foot controls.  He can continuously reach in all directions, but he can only frequently push or pull.  Tr. 151.

The ALJ asked the VE to assume a person with Plaintiff's age, education, work experience, and RFC.  The VE testified that such a person could perform the demands of sedentary jobs such as document preparer, addresser, and election clerk.  Tr. 183-84.

## Analysis

### A. Credibility Assessment

A great deal of Plaintiff's argument is that the ALJ improperly discounted the credibility of his complaints about the extent of his pain.  The court is not allowed to make an independent assessment of the claimant's credibility.  An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on her first-hand observation of the claimant, are particularly within her province and entitled to judicial deference.  Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d

160, 164 (5th Cir. 1994).  Credibility assessments are "precisely the kinds of determinations that the ALJ is best positioned to make."  <u>Falco</u>, 27 F.3d at 163-64.

The ALJ looked to all the evidence, including her firsthand observation of Plaintiff's testimony at the hearing, and did not discount his claims entirely.  She found that his medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the claims about the intensity and extent of their limiting effects were not fully credible.  The ALJ noted personal care and other daily activities that were inconsistent with the degree of helplessness described by Plaintiff.  She also noted the opinion evidence of Dr. McWilliams that Plaintiff could perform sedentary work activities subject to some limitations.  She found that opinion persuasive and consistent with the other medical evidence. Tr. 151-53.

Another person in the ALJ's position may have assessed Plaintiff's credibility differently, but the decision was made, and this court is limited to determining whether there was substantial evidence to support the decision.  There was such evidence in this case, particularly the medical records and reports that do not fully support the extent of pain and limitations claimed by Plaintiff.  The ALJ's credibility assessment is not subject to judicial reversal.

### B. RFC Findings; Ability to Perform Jobs

Plaintiff also generally challenges the RFC found by the ALJ and his ability to perform the demands of the jobs identified by the VE.  Determining a claimant's RFC is the

ALJ's responsibility.  Ripley v. Chater, 67 F.3d 552, 557 (5th Cir.1995).  "The ALJ has the authority and duty to weigh the evidence and reach any conclusion supported by substantial evidence." Gonzales v. Astrue, 231 Fed. Appx. 322, 324 (5th Cir. 2007).  This includes the authority "to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990), quoting Scott v. Heckler, 770 F.2d 482, 485 (5th Cir.1985).

    The ALJ's assessment is supported by substantial evidence in the form of the medical records, coupled with her reasonable assessment of credibility.  The ALJ did not find that Plaintiff is not limited.  Rather, she found that he is very limited because of his hip and back problems.  A person is not disabled under the law merely because they cannot return to their past work.  They must be unable to perform the demands of any other jobs that exist in significant numbers in the economy.  The VE identified three sedentary positions that Plaintiff could perform with the RFC found by the ALJ.  Plaintiff disagrees that he could perform the sitting demands of those jobs, but Dr. McWilliams found that Plaintiff could sit for a full workday.  That medical finding provides substantial evidence to support the ALJ's decision.

### C. More New Evidence

    Finally, Plaintiff seeks another remand for exploration of a possible diagnosis of piriformis syndrome.  Plaintiff states that he was diagnosed with the syndrome in February 2012 (while the case was pending before the Appeals Council).  Plaintiff attaches to his memorandum records from the VA Medical Center that state Plaintiff was "seen by

rheumatology and diagnosed with piriformis syndrome in February 2012" and was receiving physical therapy but said he did not think it was helping.  The actual diagnosis record is not attached, and it is not clear whether the quoted language was based on knowledge of the physician who wrote it or was simply a notation of Plaintiff's report of such a diagnosis. Plaintiff attaches information that describes the syndrome as occurring when the sciatic nerve is compressed or irritated by the piriformis muscle, causing pain, tingling, and numbness in the buttocks and along the sciatic nerve along the leg.

The court may remand a case to the Commissioner for the taking of additional evidence if there is a "showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).  Plaintiff has not articulated good cause for why he did not submit evidence of the February 2012 diagnosis to the Appeals Council, which did not decide his claim until June 22, 2012.  The law is designed to encourage submission of all relevant evidence to the Agency so it has the best opportunity to decide the case on a full record and avoid needless, repetitive hearings that result when a party does not produce available evidence until the case reaches court. Plaintiff had several months to submit evidence of the diagnosis to the Appeals Council, and he has not explained why he did not do so. There is no good cause to support remand.

New evidence must also give rise to a reasonable probability it would change the outcome of the Commissioner's decision. <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995). The new evidence simply indicates Plaintiff may suffer from a particular condition, but the

mere presence of a condition or impairment does not establish limitations.  Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983).  The Commissioner did not find that Plaintiff did not have a spine/nerve impairment. Rather, she found that the degree of impairment evidenced by the objective medical finding did not impose functional restrictions of disabling severity.  There is no evidence in the new records submitted by Plaintiff that the diagnosis would indicate any greater functional limitations than already found or undermine the findings of Dr. McWilliams that were based on firsthand observation of Plaintiff.  A second remand is not warranted.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed and that Plaintiff's complaint be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of April, 2013.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE